**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal Number:** |
| | : | |
| | : | **VIOLATION:** |
| **v.** | : | |
| | : | **Count One:** |
| | : | **18 U.S.C. § 371** |
| **RUSSELL JAMES CASO, JR.** | : | **(Conspiracy)** |

**INFORMATION**

The United States of America informs the Court that:

**COUNT ONE – CONSPIRACY**

Introduction

1.      Beginning in January 2004, defendant RUSSELL JAMES CASO, JR. ("CASO")
served as a legislative assistant to a Member of the United States House of Representatives
("Representative A").  In January 2005, CASO became the Chief of Staff to Representative A,
a position that CASO held until January 2007.  Representative A served on both the House
Committee on Armed Services and the House Committee on Homeland Security.

2.      CASO's duties and responsibilities as Chief of Staff included: the supervision
of other staffers; scheduling meetings, press conferences, and speaking engagements for
Representative A; responding to media inquiries; assisting Representative A by coordinating
activities with the Executive Branch and with other members of the Legislative Branch; and
facilitating assistance for Representative A's constituents.

3.      "Firm A" was a non-profit consulting firm, incorporated in Colorado and
Delaware, and headquartered in Washington, D.C.  Firm A had a stated mission of helping
American businesses to operate in Russia and facilitating the flow of trade between the United
States and Russia.

4.      Representative A, who served on Firm A's governing council, was a strong supporter of Firm A, which declared that it desired to implement goals for United States-Russian relations and trade that had been outlined in a policy proposal authored by Representative A in 2001.

5.      One of Firm A's purported goals was to develop and obtain funding for a proposal to facilitate cooperation with respect to joint missile defense activities ("Proposal A"). Another of Firm A's purported goals was to develop and obtain funding for a proposal to reduce the risk of the proliferation of biological and chemical weapons from Russia to rogue nations ("Proposal B"). Firm A sought to submit Proposal A and Proposal B to various Executive Branch agencies seeking federal funding for these efforts. Firm A's General Secretary met frequently with and sought official action from Representative A and Representative A's staff, including their assistance in obtaining funding for Proposal A and Proposal B. Firm A has not succeeded in obtaining federal funding for Proposal A or Proposal B.

6.      As Representative A's Chief of Staff, CASO was required to submit annual Financial Disclosure Statements ("Disclosure Statements") detailing certain income and other money received by CASO and his wife, travel payments and reimbursements, and other information. In Schedule I of each Disclosure Statement, entitled "Earned Income," CASO was instructed to "[l]ist the source, type, and amount of earned income from any source (other than the filer's current employment by the U.S. government) totaling $200 or more during the preceding calendar year. For a spouse, list the source and amount of any honoraria; list only the source for other spouse earned income exceeding $1,000."

-2-

The Conspiracy

7.    From in or about the middle of 2005 until in or about May 2006, in the District of

Columbia and elsewhere, defendant RUSSELL JAMES CASO, JR. and Firm A's General

Secretary did unlawfully and knowingly combine, conspire, confederate, and agree together and

with each other to commit the offense against the United States of Honest Services Wire Fraud,

that is, to devise and execute a scheme to defraud the United States of its right to the honest

services of CASO, and for the purpose of executing such scheme use interstate wire

communications, in violation of Title 18, United States Code, Sections 1343 and 1346.

Manner and Means of the Conspiracy

8.    In furtherance of this conspiracy, CASO and Firm A's General Secretary used the

following methods and means, among others:

A.    From April 2005 through August 2005, Firm A and a consulting firm

associated with Firm A paid CASO's wife a total of $19,000. CASO's wife received

$1,500 of this money for editing drafts of Proposal A and Proposal B. CASO's wife

performed little work for the remaining $17,500.

B.    In the middle of 2005, at Representative A's direction, CASO organized

and attended meetings with high-level officials in Executive Branch agencies, in which

Representative A and CASO argued that Proposal A and/or Proposal B should be

federally funded.

C.    On the Disclosure Statement covering calendar year 2005, CASO

intentionally failed to disclose that his wife received payments from Firm A even though

he knew that he was required to do so.

-3-

D.    CASO and Firm A's General Secretary used and caused the use of interstate electronic mail and interstate telephone calls.

Overt Acts

9.    Within the District of Columbia and elsewhere, in furtherance of the above-described conspiracy, and in order to carry out the objects thereof, CASO and Firm A's General Secretary committed and caused to be committed the following overt acts, among others:

A.    In or about April 2005, Firm A's General Secretary retained CASO's wife to edit a draft of Proposal A and Proposal B.

B.    In or about April 2005, CASO's wife deposited a check, from the account of a consulting firm associated with Firm A, that was dated April 28, 2005, and was in the amount of $1,500.

C-E.    From in or about May 2005 through August 2005, CASO's wife deposited three checks from Firm A's bank account: a check dated May 27, 2005, in the amount of $2,500; a check dated July 21, 2005, in the amount of $10,000; and a check dated August 25, 2005, in the amount of $5,000.

F.    In or about the middle of 2005, Representative A and CASO organized and attended meetings with high-level officials in Executive Branch agencies, including the Departments of State and Energy and the National Security Council, in which Representative A and CASO argued that Firm A's proposals should be federally funded.

G.    On or about May 15, 2006, CASO signed and filed with the U.S. House of Representatives the Disclosure Statement covering the calendar year 2005, certifying that the statements contained therein were true, complete, and correct, even though CASO

-4-

intentionally failed to disclose that his wife had received payments from Firm A.

**(Conspiracy, in violation of Title 18, United States Code, Section 371)**

Respectfully submitted,

_Jeffrey A. Taylor/HS_

| | | |
|---|---|---|
| BRUCE G. OHR | JEFFREY A. TAYLOR | WILLIAM M. WELCH II |
| Chief | United States Attorney | Chief |
| Organized Crime and | D.C. Bar No. 498610 | Public Integrity Section |
| Racketeering Section | | |

_Gregory CJ Lisa /HS_ _Howard R. Sklamberg_ _Armand O. Bonilla /HS_

JENNIFER SHASKY CALVERY
Trial Attorney
GREGORY C.J. LISA
Trial Attorney
D.C. Bar No. 457739
Organized Crime and
          Racketeering Section
Criminal Division
U.S. Department of Justice
1301 New York Ave., NW
7th Floor
Washington, DC  20005
T: 202-514-3594
F: 202-514-3601

HOWARD R. SKLAMBERG
D.C. Bar No. 453852
Assistant U.S. Attorney
Fraud & Public Corruption
          Section
D.C. Bar No. 453852
555 Fourth Street, NW
Room 5836
Washington, DC  20001
T: 202-514-7296
F: 202-305-8537

ARMANDO O. BONILLA
Trial Attorney
Public Integrity Section
Criminal Division
U.S. Department of Justice
1400 New York Ave., NW
12th Floor
Washington, DC  20005
T: 202-616-2983
F: 202-514-3003