UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | FILED |
| | : | DEC 0 7 2007 |
| RUSSELL JAMES CASO, JR. | : | NANCY MAYER WHITTINGTON, CLERK |
| | | U.S. DISTRICT COURT |

STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, defendant RUSSELL JAMES CASO, JR. ("CASO") and the United States agree and stipulate as follows:

Introduction

1. Beginning in January 2004, CASO served as a legislative assistant to a Member of the United States House of Representatives ("Representative A"). In January 2005, CASO became the Chief of Staff to Representative A, a position that CASO held until January 2007. Representative A served on both the House Committee on Armed Services and the House Committee on Homeland Security.

2. CASO's duties and responsibilities as Chief of Staff included: the supervision of other staffers; scheduling meetings, press conferences, and speaking engagements for Representative A; responding to media inquiries; assisting Representative A by coordinating activities with the Executive Branch and with other members of the Legislative Branch; and facilitating assistance for Representative A's constituents.

3. "Firm A" was a non-profit consulting firm, incorporated in Colorado and Delaware, and headquartered in Washington, D.C. Firm A had a stated mission of helping American businesses to operate in Russia and facilitating the flow of trade between the United

States and Russia.

4.      Representative A, who served on Firm A's governing council, was a strong supporter of Firm A, which declared that it desired to implement goals for United States-Russian relations and trade that had been outlined in a policy proposal authored by Representative A in 2001.

5.      One of Firm A's purported goals was to develop and obtain funding for a proposal to facilitate cooperation with respect to joint missile defense activities ("Proposal A"). Another of Firm A's purported goals was to develop and obtain funding for a proposal to reduce the risk of the proliferation of biological and chemical weapons from Russia to rogue nations ("Proposal B"). Firm A sought to submit Proposal A and Proposal B to various Executive Branch agencies seeking federal funding for these efforts. Firm A's General Secretary met frequently with and sought official action from Representative A and Representative A's staff, including their assistance in obtaining funding for Proposal A and Proposal B. Firm A has not succeeded in obtaining federal funding for Proposal A or Proposal B.

### Firm A's Hiring of and Payments to CASO's wife

6.      In or about April 2005, Firm A's General Secretary retained CASO's wife to edit written drafts of Proposal A and Proposal B. CASO's wife finished editing the proposals in May 2005. Firm A and CASO's wife exchanged drafts of the proposals using electronic mail. CASO's wife deposited a check, from the account of a consulting firm associated with Firm A, that was dated April 28, 2005, and was in the amount of $1,500.

7.      Subsequently, CASO's wife received and deposited three more checks from Firm A's bank account: a check dated May 27, 2005, in the amount of $2,500; a check dated July 21,

2005, in the amount of $10,000; and a check dated August 25, 2005, in the amount of $5,000. CASO knew that his wife did little work in return for this money.

8. The General Secretary of Firm A and CASO's wife discussed the prospect of CASO's wife performing additional work, including, among other things, helping to design a website, if Proposal A or Proposal B were to receive federal funding. The proposals were never funded, and the additional work tied to the receipt of the funding was never performed. The General Secretary of Firm A later attempted to recruit CASO's wife to play what he described as a large role in Firm A's business. CASO's wife declined the invitation.

9. CASO knew that his wife received the money identified in Paragraphs 6 and 7 and was aware of the fact that the market value of the work that CASO's wife ultimately performed for Firm A was far below $19,000.

### CASO's Intentional Failure to Disclose His Wife's Receipt of Payments from Firm A

10. As Representative A's Chief of Staff, CASO was required to submit annual Financial Disclosure Statements ("Disclosure Statements") detailing certain income and other money received by CASO and his wife, travel payments and reimbursements, and other information. In Schedule I of each Disclosure Statement, entitled "Earned Income," CASO was instructed to "[l]ist the source, type, and amount of earned income from any source (other than the filer's current employment by the U.S. government) totaling $200 or more during the preceding calendar year. For a spouse, list the source and amount of any honoraria; list only the source for other spouse earned income exceeding $1,000."

11. On the Disclosure Statement covering calendar year 2005, CASO intentionally failed to disclose that his wife received payments from Firm A, as identified in Paragraphs 6

-3-

and 7 of this Statement of Offense, even though he knew that he was required to do so. A reason for this non-disclosure was that CASO knew that his wife's financial relationship with Firm A created a personal conflict of interest. On or about May 15, 2006, CASO signed this Disclosure Statement, certifying that the statements contained therein were true, complete, and correct, and caused it to be filed with the U.S. House of Representatives.

12. CASO did not otherwise disclose the money identified in Paragraphs 6 and 7 to the House of Representatives, other parts of the government, or to the general public.

13. CASO and Firm A's General Secretary had a common understanding that these payments would not be disclosed to the government or to the general public, such as through the inclusion of the payments on the Disclosure Statement.

### The Efforts of Representative A and CASO to Secure Federal Funding for Firm A to Implement the Proposals

14. In the middle of 2005, shortly after Proposal A and Proposal B were completed, Representative A forwarded the proposals to the Department of State.

15. For the next several months, at Representative A's direction, CASO organized meetings in which Representative A and CASO made presentations to various Executive Branch agencies, including to high-level officials in the Departments of State and Energy and the National Security Council. Representative A and CASO argued that Proposal A and/or Proposal B should be federally funded.

### Use of Interstate Electronic Mail and Interstate Telephone Calls

16. Interstate electronic mail and interstate telephone calls were used in furtherance of some of the activities described in Paragraphs 6-15 of this Statement of Offense. CASO and the

General Secretary of Firm A foresaw the use of interstate electronic mail and interstate telephone calls in these activities.

Respectfully submitted,

*Jeffrey A Taylor/HS*

| | | |
|---|---|---|
| BRUCE G. OHR<br>Chief<br>Organized Crime and<br>    Racketeering Section | JEFFREY A. TAYLOR<br>United States Attorney<br>D.C. Bar No. 498610 | WILLIAM M. WELCH II<br>Chief<br>Public Integrity Section |

*Gregory CJ Lisa/HS*   *Howard R Sklamberg*   *Armando O. Bonilla/HS*

JENNIFER SHASKY CALVERY
Trial Attorney
GREGORY C.J. LISA
Trial Attorney
D.C. Bar No. 457739
Organized Crime and
    Racketeering Section
Criminal Division
U.S. Department of Justice
1301 New York Ave., NW
7th Floor
Washington, DC 20005
T: 202-514-3594
F: 202-514-3601

HOWARD R. SKLAMBERG
Assistant U.S. Attorney
Fraud & Public Corruption
    Section
D.C. Bar No. 453852
555 Fourth Street, NW
Room 5836
Washington, DC 20001
T: 202-514-7296
F: 202-305-8537

ARMANDO O. BONILLA
Trial Attorney
Public Integrity Section
Criminal Division
U.S. Department of Justice
1400 New York Ave., NW
12th Floor
Washington, DC 20005
T: 202-616-2983
F: 202-514-3003

**DEFENDANT'S ACCEPTANCE**

I have read every word of this Statement of Offense. Pursuant to Fed. R. Crim. P. 11, after consulting with my attorney, I agree and stipulate to this Statement of Offense, and declare under penalty of perjury that, based upon my personal knowledge and information provided to me which I believe to be accurate, it is true and correct.

Date: 12-4-07

RUSSELL JAMES CASO, JR.
Defendant

I have read this statement of offense and reviewed and discussed it with my client. I concur with his decision to stipulate to this Statement of Offense.

Date: 12/4/07

KELLY B. KRAMER, Esq.